UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CRAIG CALHOUN,**

    Petitioner,

v.                                                         Case No. 8:19-cv-1319-T-33JSS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner Craig Calhoun's timely-filed *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Upon consideration of the petition, the response (Doc. 9), and Calhoun's reply (Doc. 12), the Court **ORDERS** that the petition is **DENIED**.

### PROCEDURAL BACKGROUND

Calhoun pleaded guilty to two counts of failing to report as a sexual offender. (Doc. 9-2, Exs. 3, 4) He was sentenced to concurrent terms of 97.275 months in prison. (Doc. 9-2, Exs. 8, 9) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 9-2, Ex. 17) Calhoun filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 9-2, Ex. 23) The state court dismissed his motion with leave to amend, and denied the motion with prejudice when Calhoun failed to file an amendment. (Doc. 9-2, Exs. 24, 25). However, the state court granted Calhoun's motion for rehearing and allowed Calhoun to file an amended motion. (Doc. 9-2, Exs. 26, 27) After conducting an evidentiary hearing, the state court denied Calhoun's amended

1

motion. (Doc. 9-2, Exs. 28, 29; Doc. 9-3, Ex. 32; Doc. 9-4, Exs. 33, 34). The state appellate court *per curiam* affirmed the denial of relief. (Doc. 9-4 Ex. 39).

## FACTUAL BACKGROUND

Under Florida law, a person designated as a sexual offender must comply with reporting requirements. A sexual offender must report any change in certain information, including his address of residence, within 48 hours to a driver's license office. *See* §§ 943.0435(2)(a)2., (4)(a), Fla. Stat. Failure to comply is a third degree felony. § 943.0435(9)(a), Fla. Stat. At the change of plea hearing, Calhoun pleaded guilty to the following facts, as stated on the record by the prosecutor:

> With respect to [case number] 13-CF-6954, the defendant is a sex offender under Florida law. He listed his address at DMV as 1724 East Mulberry Drive in Tampa, Florida. As of February 26th, 2013, witness[es] Yancee Brown and Patricia Walker would testify that the defendant moved from that address on February 22nd, 2013. On February 25th, 2013, the defendant violated 943.0435 by failing to report his new address - - new permanent residence to DMV within forty-eight hours. The defendant can be identified, and that offense did occur in Hillsborough County.
>
> With respect to [case number] 13-CF-8412, again, the defendant is a sex offender under Florida law. The defendant was released from custody on the prior case on June 1st, 2013. His listed address with DMV was, again, 1724 East Mulberry Drive in Tampa, Florida. As of June 13th, 2013, the defendant had not updated his permanent residence with DMV, and he was not living at the 1724 East Mulberry address in Tampa, Florida. The defendant can be identified with respect to that charge, and that offense did occur in Hillsborough County.

(Doc. 9-2, Ex. 5, transcript pp. 25-26)

## STANDARDS OF REVIEW

**I.   AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an

3

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.     Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Calhoun must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Calhoun must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

4

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because Calhoun pleaded guilty, he must show a reasonable probability that he would have insisted on proceeding to trial rather than entering his plea. *Hill v. Lockhart*, 47 U.S. 52, 59 (1985).

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## DISCUSSION

Ground One

Calhoun argues that his attorneys, Assistant Public Defenders Marc Gilman and Rebecca Henderson, were ineffective in not investigating and introducing at his sentencing hearing "valid mitigating factors related to Petitioner's voluntary enrollment and completion of [a] substance abuse program while at Hillsborough County Jail." (Doc. 1 at 2) Calhoun further claims that counsel were ineffective in failing to retain a mitigation specialist to compile a mitigation package "based on an investigation of Petitioner's prior

5

arrest, convictions, mental health reports, and substance diagnosis and treatment." (Doc.

1 at 3).

The state court denied Calhoun's claims after an evidentiary hearing:

After reviewing the allegations, the testimony, evidence, and arguments presented at the September 6, 2017, evidentiary hearing, the court files, and the record, the Court finds Mr. Gilman's and Ms. Henderson's testimony more credible than that of Defendant. The Court finds Defendant's counsel did request that a mitigation specialist that worked for their office complete a summary and make any referrals that they deemed appropriate in regards to any substance abuse issues. The Court finds the referral was made to New Beginnings drug treatment program and Ms. Henderson advised the Court at the sentencing hearing that Defendant had been accepted into the New Beginnings program and would be transported to complete the program if the Court ordered that he complete said program. The Court finds although neither Ms. Henderson nor Mr. Gilman solicited and enlisted the services of the specialist to compile a "detailed report for submission to the Court and the State as part of a valid mitigation package," the Court finds counsel presented mitigation evidence through Defendant's testimony, argued in support of a downward departure of probation to include drug treatment, and advised the Court that he had been accepted into the New Beginnings program and they prepared a treatment plan for him to include attending progressional meetings, preparing for work, school, and GED classes. Consequently, the Court finds Defendant failed to prove that his counsel failed to investigate his substance abuse problem when his counsel did request a mitigation specialist to compile a summary for purposes of mitigation, and said specialist made a referral to the New Beginnings program, and Defendant was accepted into the program. The Court further finds Defendant failed to prove that counsels' alleged failure to present to the Court and State Attorney the substance abuse treatment resulted in prejudice when counsel argued such at sentencing and the Court was made aware of such at the sentencing hearing through counsel's argument and Defendant's testimony. However, the Court finds both Mr. Gilman and Ms. Henderson advised Defendant that it was unlikely he would receive probation with drug treatment based on his scoresheet, which included a minimum of 97.275 months' prison. The Court finds based on the fact that he scored high on the scoresheet, even if counsel had presented the alleged specialists to testify at the sentencing, it would not have resulted in Judge Campbell imposing probation with drug treatment. As such, no relief is warranted upon this portion of claim one.

With respect to any mental health issues, the Court finds Defendant advised the mitigation specialist that he did not have any mental health issues. The

> Court finds other than a couple of Baker Acts[1] from the nineties, which Defendant advised the specialist were drug related and not related to any mental health issues, there was no evidence that Defendant had any mental health issues as he was not on any medication and was not seeking any services for mental health while at the county jail. Therefore, the Court finds no mental health experts evaluated Defendant based on the fact that Defendant advised the mitigation specialist that he did not have any mental health issues and only had a drug problem. Consequently, the Court finds Defendant failed to prove that counsel acted deficiently in failing to investigate and present to the Court and State Attorney the alleged mental health specialist when no mental health specialist evaluated him. The Court further finds Defendant failed to prove prejudice as he failed to present any admissible evidence to prove he had any mental health issues. As such, no relief is warranted upon claim one.

(Doc. 9-4, Ex. 34, pp. 16-18) (state court's record citations omitted).

Calhoun has not demonstrated entitlement to relief. As addressed in the state court's order, the record shows that counsel prepared and presented mitigating evidence at sentencing concerning Calhoun's completion of the jail's drug treatment program. Gilman's and Henderson's evidentiary hearing testimonies reflect that the defense requested a mitigation background history and any appropriate referrals from a mitigation specialist. (Doc. 9-4, Ex. 33, transcript pp. 38, 69). With respect to mental health issues, Gilman testified that Calhoun told the interviewer he did not have any mental health issues and that his two earlier commitments under the Baker Act were drug-related. (Doc. 9-4, Ex. 33, transcript p. 38) Henderson testified that she reviewed the mitigation information in preparing for sentencing. (Doc. 9-4, Ex. 3, transcript pp. 69-70)

Counsel presented Calhoun's testimony at the sentencing hearing. Calhoun told the sentencing court that he successfully completed an in-house drug treatment program at the jail, as well as two required follow up programs. (Doc. 9-2, Ex. 7, transcript p. 18).

---

[1] *See* §§ 394.451 and 394.467, Fla. Stat. ("The Baker Act" provides for involuntary inpatient placement under certain circumstances).

Calhoun also stated at sentencing that an individual from New Beginnings visited him in the jail and accepted him into the program pending the court's approval. (Doc. 9-2, Ex. 7, transcript pp. 20-21).

Additionally, Henderson argued for a sentence of probation with a residential drug treatment program. Henderson pointed out Calhoun's completion of the jail programs as well as his acceptance by New Beginnings. (Doc. 9-2, Ex. 7, transcript p. 25) She informed the court that New Beginnings had prepared a treatment program for Calhoun "to include attending progressional meetings, preparing for work, school" and job training. (Doc. 9-2, Ex. 7, transcript p. 16) Henderson argued that Calhoun was amenable to drug treatment and had shown his commitment to treatment by completing the jail programs. (Doc. 9-2, Ex. 7, transcript p. 16-17) Henderson also argued for a departure sentence based on factors such as Calhoun's diminished capacity to appreciate the criminal nature of his conduct due his prior head injuries and drug use; the isolated and unsophisticated nature of the offenses; and Calhoun's difficult upbringing. (Doc. 9-2, Ex. 7, transcript pp. 24-27).

The state court's finding that Calhoun's attorneys were credible is a finding of fact that carries a presumption of correctness. This presumption can only be rebutted by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [a petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)). Calhoun has not overcome the presumption of correctness by clear and convincing evidence. The evidentiary hearing testimony that the state court found credible shows that Calhoun's attorneys investigated what mitigating

8

evidence would be available to Calhoun and considered this mitigation in advance of the sentencing hearing. Indeed, the record demonstrates that counsel put forth numerous mitigating factors for the sentencing court's consideration.

Furthermore, the state court found that, given the applicable sentencing guidelines, Calhoun did not show a reasonable probability the sentencing judge would have imposed a probationary sentence if further mitigation had been presented. Under these circumstances, Calhoun has not shown that the state court unreasonably rejected his ineffective assistance of counsel claim.

Calhoun has not demonstrated that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Calhoun is not entitled to relief on Ground One.

**Grounds Two And Three**

In Grounds Two and Three, Calhoun argues that counsel was ineffective in failing to investigate and present documentary evidence that would show he complied with reporting requirements. In Ground Three, Calhoun similarly claims that counsel was ineffective in not investigating and calling witnesses who could testify that he paid bills at his stated address.

These claims, which go to the evidence of Calhoun's guilt, were waived by the entry of Calhoun's plea. Since a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the knowing and voluntary nature of the plea. Entry of a plea, therefore, precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims relating to the deprivation of

constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

As Calhoun fails to allege or show that his plea was rendered involuntary by counsel's alleged omissions, these claims are waived. *See Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) ("Mr. Bullard does not contend that his plea was involuntary due to his counsel's failure to file a motion to suppress, so the ineffectiveness claim is waived by the plea."). Grounds Two and Three therefore do not warrant federal habeas relief.

Accordingly, it is **ORDERED** that Calhoun's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Calhoun and to **CLOSE** this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Calhoun is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of

the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Calhoun must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Calhoun has not made the requisite showing. Finally, because Calhoun is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on January 27, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Craig Calhoun
Counsel of Record